UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

```
MARK DOUCETTE,                     )
                                   )    2:05-cv-01362-GEB-KJM
              Plaintiff,           )
                                   )    ORDER
     v.                            )
                                   )
COUNTY OF SACRAMENTO; DEPUTY       )
MARTIN CROSBY; SERGEANT DAVID      )
CUNEO; DEPUTY CORY MOORE,          )
                                   )
              Defendants.          )
                                   )
```

Defendants move to enforce the settlement agreement reached between Defendants and Plaintiff ("Doucette" or "Plaintiff"). Doucette opposes the motion.[1]

BACKGROUND

On November 8, 2003, Plaintiff was arrested for allegedly driving a vehicle with stolen license plates. Plaintiff filed a Complaint against Defendants claiming, *inter alia*, that he was unlawfully arrested and that Defendants used excessive force against him in violation of 42 U.S.C. § 1983. Plaintiff and Defendants

---

[1] No formal opposition was filed on Doucette's behalf because his attorneys do not oppose the motion. Doucette opposed the motion and argued against it at the hearing and the Court considered his filings against the settlement.

1

entered into mediation on January 29, 2007 and according to Defendants, reached a settlement agreement. (Mot. at 3:4; Mark Doucette Decl. Opposing Settlement Agreement ("Doucette Decl.") ¶ 2.) Subsequently, upon the parties' joint request and stipulation, on March 1, 2007, the Court issued an Order continuing the final pre-trial conference scheduled for March 12, 2007, for a period of two weeks based on the parties' representation that the "case was settled with one provision of the settlement agreement requiring that the amount of the settlement be approved by the Sacramento County Risk Management."[2] (March 1, 2007 Order at 1:24-26.) Also on March 1, 2007, Doucette filed a letter addressed to the Court dated February 6, 2007, in which he requested an extension of the final pretrial conference and trial date because he was seeking new attorneys to represent him in the matter. Further, on March 5, 2007, Doucette filed a Declaration in which he declares he attended the mediation on January 29, 2007, but the signature on the settlement agreement is not his. (Doucette Decl. ¶ 6.)

## DISCUSSION

A hearing was held on Monday, May 14, 2007. Defendants' attorney Mark O'Dea, Doucette, and Doucette's attorney Deborah Barron, appeared at the hearing. O'Dea stated that Doucette signed the settlement agreement. Barron stated that Doucette clearly signed the settlement agreement and that he is now experiencing "buyer's remorse." Doucette stated that he did not recall whether he signed the agreement. When asked if the statement that "he did not recall" signing the settlement agreement could mean that he may have signed it

---

[2]     The provision was subsequently approved.

2

but could not remember, Doucette responded affirmatively and added that, in the alternative, his statement could mean that he misunderstood what he was signing.[3]

Defendants submit the declaration of the mediator, Daniel Quinn, in support of their motion, who declares that "Doucette signed the settlement agreement in front of his attorneys." (Decl. of Daniel F. Quinn in Supp. of Mot. ¶ 4.) Defendants also argue that "[b]oth attorneys who represent the Plaintiff in this action deny that [the signature on the settlement agreement] is a forgery, and have stated that the settlement agreement was authorized by Mr. Doucette." (Mot. at 4:3-5.)

"A settlement agreement is treated as any other contract for purposes of interpretation." United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 866 (9th Cir. 1992). "It is well-settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). "However, the district court may only enforce complete settlement agreements." Id. Complete settlement agreements are those where there is no disputed "material facts concerning the *existence* or *terms* of an agreement to settle."

---

[3] Other matters were discussed at the hearing. In particular, Doucette expressed his intention of obtaining new representation in this matter and requested fourteen to twenty-one days to engage new counsel. However, Doucette indicated that he would only be able to obtain new counsel on the condition that his current attorneys withdraw from the case because new counsel refused to share an eventual attorney fee award with the current attorneys. Barron would not change the fee arrangement which Doucette argued would enable him to get another lawyer. Doucette stated that upon obtaining an award at trial, he would be willing to stipulate to pay Barron the same amount she would be entitled to under the terms of the settlement agreement. Barron countered that she would not accept such a stipulation.

3

1  Id. Under California law, the determination of the existence or terms
2  of an agreement is made by reference to the objective intent of the
3  parties. United Commercial Ins. Serv., Inc., 962 F.2d at 866.
4  Objective intent is "the intent manifested in the agreement and by
5  surrounding conduct[,] rather than the subjective beliefs of the
6  parties. For this reason, the true intent of a party is irrelevant if
7  it is unexpressed." Id. In other words, the parties' "outward
8  manifestation or expression of assent is controlling." Binder v.
9  Aetna Life Ins. Co., 75 Cal. App. 4th 832, 851 (1999).
10          In this case, while Plaintiff affirmatively stated in his
11 declaration that he "did not sign this settlement agreement and the
12 signature on the document is not [his,]" at the hearing, Plaintiff
13 contradicted himself by stating that he did not *recall* whether he had
14 signed the settlement agreement. (Doucette Decl. ¶ 6.) Plaintiff
15 then indicated to the Court that this statement could mean that he
16 signed the agreement yet did not remember doing so or that he
17 misunderstood what he had signed. Under California law, "the courts
18 will not set aside contractual obligations, particularly where they
19 are embodied in written contracts, merely because one of the parties
20 claims to have been ignorant of, or to have misunderstood, the
21 provisions of the contract." Hedging Concepts, Inc. v. First Alliance
22 Mortgage Co., 41 Cal. App. 4th 1410, 1421 (1996). Further, Defendants
23 submitted a number of documents containing Plaintiff's signature that
24 are substantially similar to Plaintiff's alleged signature on the
25 settlement agreement. (See John A. Lavra Decl. in Supp. of Mot., Exs.
26 J, K, L.) Since the record evinces that Plaintiff signed the
27 settlement agreement, and the parties' "outward manifestation or
28 expression of assent is controlling" under California law, the

settlement agreement is complete and will be enforced.  <u>Binder</u>, 75 Cal. App. 4th at 851.

## CONCLUSION

For the reasons stated, the parties have reached a settlement agreement as reflected in Exhibit A of the Lavra Declaration.  Therefore, pursuant to the settlement agreement, this action is dismissed with prejudice.  The Clerk of the Court is directed to serve Plaintiff with a copy of this Order at the following address: Mark A. Doucette; 767 Eagle Avenue; Alameda, California 94501.

IT IS SO ORDERED.

Dated:  May 25, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge